**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

IAN SEAN GORDON,

      Petitioner,

vs.                         Case No.:    3:12-cv-1265-J-34JRK
                                                      3:10-cr-130-J-34JRK

UNITED STATES OF AMERICA,

      Respondent.

_____/

## ORDER

This case is before the Court on Petitioner Ian Sean Gordon's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 1, Motion to Vacate)[1], filed on November 19, 2012.  The United States filed a Motion to Dismiss and Response in Opposition on January 10, 2014.  (Doc. 11, Response).  Gordon filed a Reply on March 18, 2014.  (Doc. 13, Reply).

Pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[2], the Court has considered the need for an evidentiary hearing and determines that an evidentiary hearing is not necessary to resolve the merits of this action. See Aron v. United States, 291 F.3d 708, 714–15 (11th Cir. 2002) (indicating that an

---

[1]     Citations to Gordon's criminal case file, United States of America v. Ian Sean Gordon, 3:10-cr-130-J-34JRK, are denoted as "Crim. Doc. ___."  Citations to Gordon's civil § 2255 case file, 3:12-cv-1265-J-34JRK, are denoted as "Doc. ___."

[2]     Rule 8(a) of the Rules Governing Section 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before deciding on a § 2255 motion.

evidentiary hearing on a § 2255 petition is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming the facts that he alleges are true, he still would not be entitled to any relief); Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (concluding that a petitioner's ineffective assistance claim can be dismissed without an evidentiary hearing when the petitioner alleges facts that, even if true, would not entitle him to relief); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) ("On habeas a federal district court need not conduct an evidentiary hearing if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel."); Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007).[3]  For the reasons set forth below, Gordon's Motion to Vacate is due to be denied.

## I.    Background

Over the course of approximately two weeks during March 2010, Gordon forced a minor whom he knew to be 15-years old to perform commercial sex acts at various hotels in the Jacksonville, Florida area.  During that short time, Gordon made A.B. perform at least 50 sex acts with various strangers.  (Crim. Doc. 38, Plea Agreement at 16).  Gordon used violence, as well as threats of violence against A.B. and her family, in order to force A.B. to continue performing sex acts for money.  Id. at 18-19.  Gordon, then a 28-year old man, hit the 15-year old girl on more than one occasion, raped her at least once, and would take her clothes in order to force her to stay in the hotel room while she awaited

---

[3]    Although the Court does not rely on unpublished opinions as precedent, they may be cited throughout this Order as persuasive authority on a particular point.  Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits the Court to cite to unpublished opinions that have been issued on or after January 1, 2007.  Fed. R. App. P. 32.1(a).

more customers.  Gordon threatened A.B.'s family and suggested it would not bother him to kill her.  Gordon would also wield a replica gun in front of A.B. to back up his threats.  A.B. eventually escaped and called her mother for help.  Thereafter, A.B.'s mother took her to the police, where they reported what Gordon had done.

On May 13, 2010, a grand jury sitting in the Middle District of Florida indicted Gordon on one count of recruiting a minor to perform commercial sex acts through means of force, threats of force, fraud, or coercion, in violation of 18 U.S.C. § 1591.  (Crim. Doc. 1, Indictment).  Gordon pled guilty to the charge pursuant to a written plea agreement on August 23, 2010.  The Plea Agreement notified Gordon that the mandatory minimum term of imprisonment was 15 years, with a maximum potential sentence of life in prison.  Plea Agreement at 1-2.  The Plea Agreement laid out the elements of the crime with which Gordon was charged, as well as the facts the government was prepared to prove.  Id. at 2, 15-21.  Under the Plea Agreement, Gordon waived the right to directly appeal or collaterally attack his sentence.  Plea Agreement at 10-11; Crim. Doc. 65, Plea Tr. at 16-18.  In return Gordon received the government's assurance that it would: (1) not charge Gordon with any other criminal conduct of which it knew at the time; (2) not oppose Gordon's request for a two-level reduction of his offense level pursuant to § 3E1.1(a) of the United States Sentencing Guidelines ("Guidelines") for acceptance of responsibility; (3) move for an additional one-level downward adjustment for acceptance of responsibility if Gordon met certain conditions; and (4) consider moving for a further downward departure pursuant to U.S.S.G. § 5K1.1 or 18 U.S.C. § 3553(e) (or both) if Gordon provided substantial assistance.

In addition to informing Gordon of the minimum and maximum penalties, the Plea Agreement notified Gordon that the Court was neither a party to nor bound by the Plea Agreement, and that the Court was free to accept or reject it.  Plea Agreement at 9-10. The written agreement stated that Gordon would not be allowed to withdraw his guilty plea even if the Court rejected the recommendations the parties agreed to in the Plea Agreement.  Id. at 10.  In signing the Plea Agreement, Gordon acknowledged that he pled guilty knowingly and voluntarily, free of coercion of any kind, and without reliance on any promises or understandings other than those stated in the Plea Agreement.  Id. at 11. Gordon also agreed that he was satisfied with the representation and advice he received from counsel.  Id. at 11-12.  Gordon confirmed that he pled guilty because he was in fact guilty.  Id. at 12.  Notably, the Plea Agreement incorporated a merger clause stating that the writing represented the entire agreement between Gordon and the government.  Id. at 13.

Gordon repeated the same assurances regarding his guilty plea, under oath, in the presence of the magistrate judge at his change of plea hearing.  During the hearing, the magistrate judge informed Gordon of the minimum and maximum penalties, and told Gordon that "any sentence imposed may be different than any estimated sentence your attorney has given you, and if your sentence is more severe than you expect, you would still be bound by your guilty plea and have no right to withdraw from that plea."  Plea Tr. at 9-10.  Gordon said he understood.  Id. at 10.  Gordon affirmed that he had read every word of the Plea Agreement, that he understood every word of it, that he had fully discussed it with his attorney, and identified his signature on the Plea Agreement.  Id. at 13.  The magistrate judge reiterated that the decision of whether to accept any sentencing

recommendation was "in the sole discretion of the district judge," and that if the district judge rejected any recommendation in the Plea Agreement, Gordon would not be allowed to withdraw his guilty plea. Id. at 14. Gordon stated he understood. Id. After the magistrate judge reviewed the Indictment, the elements of the crime with which Gordon was charged, and various due process rights with Gordon in open court, id. at 5-9, 11, Gordon entered his guilty plea and confirmed that he pled guilty because he was in fact guilty, id. at 18. The government then recited the factual basis of the charge, id. at 19-28, and Gordon agreed that it was true, id. at 28. Gordon further admitted each of the elements of the charge. Id. at 28-29. Gordon affirmed that it was his own decision to plead guilty, that he did so voluntarily, and that nobody had threatened, forced, or coerced him to plead guilty. Id. at 29. Gordon specifically stated that he did not plead guilty based on any promise of any kind other than those set forth in the Plea Agreement. Id. Notably, Gordon assured the Court that nobody had advised him that he would receive a light sentence, or any specific sentence at all. Id. at 29-30. Counsel for both the United States and Gordon repeated these assurances to the Court. Id. at 30. Additionally, Gordon stated that he was satisfied with his attorney, and that he had been given enough time to consult with his lawyer about the case. Id. In the end, Gordon confirmed that it was his final decision to plead guilty. Id. at 31.

Gordon appeared before the Court for sentencing on January 10, 2011. Based on a total offense level of 41 and a criminal history category of V, the Court determined that Gordon's advisory sentencing range under the Guidelines was 360 months to life in prison. (Crim. Doc. 66, Sentencing Tr. at 24-25). After hearing arguments from the government and Gordon, and considering the sentencing factors set forth under 18

U.S.C. § 3553, the Court sentenced Gordon to prison for life.  Id. at 57.  The Court explained that Gordon's conduct toward A.B., his personal characteristics, and his criminal history warranted a life sentence.  Id. at 58-61.  In particular, the Court noted Gordon's use of physical violence against A.B., as well as the use of threats of violence against her and her family in order to force her to perform commercial sex acts.  The Court explained that forcing A.B., who had only recently turned 15-years old, "to wait naked in a hotel room for the next individual who would ravage her is just barbaric.  That's the only way that can be described."  Id. at 58.  The Court observed that Gordon had a history of violence, particularly toward women, as well as a history of drug abuse.  Id. at 59.  The Court concluded that the need for deterrence and to reflect the seriousness of Gordon's offense warranted a term of life in prison.

Following sentencing, counsel for Gordon filed an Anders brief[4] with the Eleventh Circuit Court of Appeals.  Gordon filed a pro se response to his counsel's Anders brief, contending that the Court inadequately explained his sentence-appeal waiver to him, rendering the waiver invalid and unenforceable, and claiming that he unknowingly pled guilty because he believed he would be sentenced to only 15 years in prison.  (Doc. 11-6, Pro Se Response at 1-2).  After conducting an independent review of the record, however, the court of appeals agreed with counsel's assessment that there were no arguably meritorious issues.  United States v. Gordon, 438 F. App'x 859, 859 (11th Cir. 2011).

---

[4]    Anders v. California, 386 U.S. 738 (1967) (where a defendant directs his attorney to appeal but there are no meritorious issues, counsel for the defendant should file a brief with the court of appeals stating there are no meritorious issues, whereupon the appellate court will independently review the record and decide whether it agrees with counsel's assessment).

Gordon did not petition the Supreme Court for a writ of certiorari.  Therefore, his conviction and sentence became final upon the expiration of the 90-day period for seeking certiorari review.  Kaufmann v. United States, 282 F.3d 1336, 1338 (11th Cir. 2002).  Because the Eleventh Circuit issued its decision on August 24, 2011, Gordon's conviction and sentence became final on November 22, 2011.  Under 28 U.S.C. § 2255(f)(1), Gordon had one year from that date, or until November 22, 2012, to file a timely motion to vacate.  Gordon filed his Motion to Vacate on November 19, 2012, and the Motion is therefore timely.

## II.    Gordon's Motion to Vacate

In his Motion to Vacate, Gordon contends that "[c]ounsel performed ineffectively by advising the movant to enter into a plea agreement with the government for which the movant received no 'quid pro quo' notwithstanding that the movant waived certain rights, but received nothing in return."  Motion to Vacate at 4. Gordon claims that his attorney should have advised him about entering an open plea – i.e. a guilty plea without a plea agreement – which would have allowed Gordon to retain the right to appeal his sentence.  Id.  Alternatively, Gordon contends in his reply brief that "[u]nder the facts before the court, it was still possible that Petitioner would have been found not guilty after trial.  At the very least, Petitioner was entitled to exercise that Constitutional right and, had he so exercised his right to trial, he could not have, practicably, been sentenced to more than life."  Reply at 8.

Gordon proposes that what counsel should have done is foretell that the Court would sentence him to life in prison if he pled guilty, and from that prophecy counsel should have reasoned that he might as well take the case to trial.  Id. at 4-5.  In Gordon's

view, he suffered prejudice because he pled guilty, waived the right to directly appeal or collaterally challenge his sentence, and did not receive any lenience in return.  Id. at 8. However, Gordon does not claim that he was tricked or coerced into pleading guilty, or that he was unaware of the terms of his Plea Agreement.[5]  Nor does Gordon specifically allege that he would not have pled guilty and would have insisted on going to trial.  Instead he alternates between indicating that, had he known what his sentence would be, he would have either given an open guilty plea, see Motion to Vacate at 4, or he would have gone to trial, see Reply at 8.

Although Gordon, who is represented by counsel, states that he raises only one ground in his Motion to Vacate, it appears he actually has three separate grounds. Gordon seems to complain that (1) trial counsel negotiated a plea agreement unsupported by any "quid pro quo," or consideration, (2) trial counsel's advice to plead guilty rather than go to trial was generally unreasonable, and (3) trial counsel performed deficiently by not advising Gordon about entering an open plea so that he could retain his appellate rights.  Because Gordon has the benefit of counsel, the Court is under no obligation to liberally construe his pleadings.  See Aron, 291 F.3d at 715.  Nevertheless, the Court will assess each ground which he appears to present.

---

[5]      In his Reply, Gordon does allege that his sentence-appeal waiver was unknowing and involuntary. Reply at 9.  However, Gordon raised the same claim on direct review in his pro se response to trial counsel's Anders brief.  Pro Se Response at 1-2.  Following an independent review of the record, the Eleventh Circuit rejected Gordon's arguments and agreed with trial counsel that there were no arguable issues of merit. Gordon, 438 F. App'x at 859.  The transcript of Gordon's plea colloquy reflects that he knowingly and voluntarily waived the right to directly appeal or collaterally attack his sentence.

### III.    Discussion

Pursuant to Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence.   Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack.   28 U.S.C §2255(a) (2008).   Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack.   United States v. Addonizio, 442 U.S. 178, 184-86 (1979). A petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered in a collateral attack.   United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992).

As with any Sixth Amendment ineffective assistance of counsel claim, a § 2255 petitioner must demonstrate both: (1) that his counsel's conduct amounted to constitutionally deficient performance, and (2) that his counsel's deficient performance sufficiently prejudiced his defense.   Strickland v. Washington, 466 U.S. 668, 687 (1984); Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994).   In determining whether the petitioner has satisfied the first requirement, i.e. that counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance.   Weeks, 26 F.3d at 1036.   The petitioner must show, in light of all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance."   Id.   To satisfy the second requirement, that counsel's deficient performance prejudiced the

defendant, the petitioner must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different.  Id. at 1036-37 (citing Strickland, 466 U.S. at 694).  In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence.  Strickland, 466 U.S. at 695.  However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."  Id. at 697; see also Wellington v. Moore, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

To succeed on a claim that a guilty plea made pursuant to a plea agreement was obtained as the result of the ineffective assistance of counsel, a § 2255 movant must first show that trial counsel's advice "fell below an objective standard of reasonableness."  Hill v. Lockhart, 474 U.S. 52, 57 (1985) (citation omitted).  In order to demonstrate prejudice, the petitioner must show "that there is a reasonable probability that, but for counsel's errors, [the movant] would not have pleaded guilty and would have insisted on going to trial."  Id. at 59.

For the reasons set forth below, Gordon's ineffective assistance of counsel claims are refuted by the record.[6]

## A. Gordon's trial counsel did not perform deficiently by negotiating a plea agreement unsupported by an exchange of benefits

Gordon alleges that counsel rendered ineffective assistance by negotiating a plea agreement that waived Gordon's sentence-appeal rights (among others), but which did not secure any "quid pro quo" in return.  Motion to Vacate at 4.  Many courts have stated that plea agreements are analogous to contracts, see e.g., United States v. Rubbo, 396 F.3d 1330, 1334 (11th Cir. 2005); United States v. Quintero, 618 F.3d 746, 751 (7th Cir. 2010); United States v. Martin, 25 F.3d 211, 216-17 (4th Cir. 1994), and like a contract, must be supported by consideration.  See United States v. Hernandez, 134 F.3d 1435, 1437 (10th Cir. 1998) (assuming, without deciding, that the existence of consideration validated petitioner's plea agreement); United States v. Parilla-Tirado, 22 F.3d 368, 371-72 (1st Cir. 1994) (same).  However, the Court is unaware of any precedent setting aside an otherwise knowing and voluntary plea agreement based solely on a claim of inadequate consideration.

Nevertheless, the Court need not resolve that issue because Gordon's counsel negotiated a Plea Agreement supported by an exchange of benefits.  Under the Plea Agreement, the government promised not to oppose a request for a two-level reduction of Gordon's Guidelines offense level based on his acceptance of responsibility, pursuant

---

[6]     Although Gordon waived the right to directly appeal or collaterally challenge his sentence pursuant to the Plea Agreement, the Court agrees with Gordon that his sentence-appeal waiver does not bar the claims raised in the instant Motion to Vacate.  While the Plea Agreement and the record of the plea colloquy reflect that Gordon knowingly and voluntarily agreed to waive his appellate rights, even a valid plea agreement or sentence-appeal waiver does not bar a petitioner's right to challenge the very validity of a guilty plea or waiver.  See Patel v. United States, 252 F. App'x 970, 971, 974-75 (11th Cir. 2007) (per curiam).  Accordingly, the Court considers Gordon's claim on the merits.

to U.S.S.G. § 3E1.1(a).  Plea Agreement at 3; see also Plea Tr. at 14.  The United States further promised that "if the defendant's offense level prior to operation of [U.S.S.G.] subsection [3E1.1](a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b), the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level."  Plea Agreement at 3.   Additionally, the United States agreed that if the Court accepted the Plea Agreement, it would not charge Gordon with any other criminal offenses of which it knew at the time.  Id. at 2-3.  Finally, the United States agreed to consider any substantial assistance Gordon provided, and if such cooperation was provided before sentencing, to consider moving for a downward departure from Gordon's advisory Guidelines range pursuant to U.S.S.G. § 5K1.1, moving for a sentence below the mandatory minimum pursuant to 18 U.S.C. § 3553(e), or both.  Plea Agreement at 4.  Gordon does not allege that he was actually eligible for any of the downward departures under U.S.S.G. § 5K1.1 or under 18 U.S.C. § 3553.

The United States was not obligated to give any of these concessions, so Gordon obtained benefits (or potential benefits) pursuant to the Plea Agreement that he would not necessarily have otherwise received.  The government's promise not to oppose a two-level downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), as well as its promise not to bring further criminal charges if the Court accepted the Plea Agreement, provided non-illusory benefits for Gordon.  In a similar case out of the Tenth Circuit, the court held that similar consideration was sufficient to sustain a plea agreement (which also contained a sentence-appeal waiver) where the government agreed to bring no further criminal charges against the defendant and conceded that the

defendant was entitled to a three-level reduction of his offense level for accepting responsibility.  United States v. Hernandez, 134 F.3d 1435, 1437-38 (10th Cir. 1998).  Although here the government only agreed not to oppose a motion for a two-level reduction of Gordon's offense level, and to recommend that he receive a third level if it determined that he qualified, this distinction is not significant.  Indeed, the government did recommend that Gordon receive the third level reduction, and the Court accepted the government's recommendation giving Gordon the benefit of the three-level reduction for acceptance of responsibility.  The Court concludes that sufficient consideration supported Gordon's plea bargain even without looking to the other concessions the government made, and thus that counsel did not perform deficiently by negotiating a "no-benefits" plea agreement.

Notably, the government also agreed to "consider" moving for additional downward departures based on substantial assistance under U.S.S.G. § 5K1.1 or 18 U.S.C. § 3553.  Although fulfilling that promise was left to the discretion of the promisor, the United States still had a duty to exercise good faith in making those decisions – and Gordon does not allege that the United States acted in bad faith in deciding not to move for further downward departures.  "The prosecutorial discretion inherent in evaluating and deciding whether and how to reward a defendant's cooperation does not, by itself, render a plea agreement invalid."  United States v. Kilcrease, 665 F.3d 924, 928 (7th Cir. 2012) (citing Wade v. United States, 504 U.S. 181, 185-86 (1992)).  Indeed, courts of appeals have found sufficient consideration for a guilty plea where the government promised to evaluate in good faith whether a defendant's cooperation would warrant a § 3553(e) motion.  Kilcrease, 665 F.3d at 928; United States v. Isaac, 141 F.3d 477, 483 (3d Cir. 1998)

(government's promise to consider moving for a substantial assistance downward departure was not illusory); see also United States v. Rexach, 896 F.2d 710, 713-14 (2d Cir. 1990) (relying on Restatement (Second) of Contracts § 228 in finding that a cooperation agreement that left a downward departure motion to the government's discretion required the government to exercise good faith, but that the government's subjective dissatisfaction with the defendant's cooperation was a valid reason to refuse to move for a downward departure).  For this additional reason, contrary to Gordon's assertions, counsel did not negotiate a plea agreement lacking in consideration.

The Court will not "allow an otherwise valid plea agreement to be undone because the defendant did not obtain 'enough' of a benefit," as that "would undermine the efficacy of such agreements by permitting the defendant to obtain the benefit of the bargain without suffering the detriment."  United States v. Williams, 184 F.3d 666, 670 (7th Cir. 1999).  "This 'is the one outcome that would be most destructive of the plea agreement process' as '[d]efendants must take the bitter with the sweet.'"  Id. (quoting United States v. Wenger, 58 F.3d 280, 283 (7th Cir. 1995)).  Counsel negotiated a plea agreement supported by sufficient consideration, and thus did not perform outside the wide range of professionally competent assistance.  Because the Court finds that counsel did not perform deficiently, the Court need not reach the prejudice prong of the Strickland analysis for this claim.

## B. Counsel's advice that Gordon accept the plea offer was not unreasonable given the information available at the time

Gordon contends that counsel should have known that a guilty plea would result in a life sentence, and therefore it was unreasonable for counsel not to advise Gordon to

take his chances at trial.  It may be true that Gordon would not have pled guilty and would have insisted on going to trial had he known he would still end up being sentenced to life in prison.  Of course, every prisoner who has received the maximum sentence after pleading guilty would agree with Gordon's logic: "If I had known I would receive the maximum sentence, I would have taken my chances at trial because, looking back, it could only have helped."  However, this is a determination that Gordon (or Gordon's counsel) could only make with the benefit of hindsight, after the sentence has been pronounced.

The Supreme Court has insisted that in evaluating the performance of trial counsel, a court must do so based on the circumstances as they were at the time counsel acted. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.  The need for deference to counsel's judgment is especially acute in the plea bargaining stage, where

> [t]he absence of a developed or an extensive record and the circumstance that neither the prosecution nor the defense case has been well defined create a particular risk that an after-the-fact assessment will run counter to the deference that must be accorded counsel's judgment and perspective when the plea was negotiated, offered, and entered.

Premo v. Moore, 131 S. Ct. 733, 742 (2011).  As the Supreme Court explained, where a defendant pleads guilty early in the life of a case, "neither the prosecution nor the defense may know with much certainty what course the case may take.  It follows that each side, of necessity, risks consequences that may arise from contingencies or circumstances yet unperceived."  Id.  Failing to respect the latitude Strickland requires in reviewing the plea

15

bargaining process can create at least two problems.   "First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real.   The art of negotiation is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial supervision."   Id. at 741.   Second,

> ineffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect… Prosecutors must have assurance that a plea will not be undone years later because of infidelity to the requirements of AEDPA and the teachings of Strickland.  The prospect that a plea deal will afterwards be unraveled when a court second-guesses counsel's decisions while failing to accord the latitude Strickland mandates or disregarding the structure dictated by AEDPA could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to no one.

Id. at 741-42 (citations omitted).   In determining how exacting its review must be, the Court must respect its "limited role in determining whether there was manifest deficiency in light of information then available to counsel."   Id. at 741 (citing Lockhart v. Fretwell, 506 U.S. 364, 372 (1993)) (emphasis added).

These principles inform the decision here.[7]   Gordon's argument that counsel performed deficiently by not taking the case to trial depends on the assumption that counsel could and should have foreseen that pleading guilty would result in a life

---

[7]      Gordon's reliance on the companion cases of Lafler v. Cooper, 132 S. Ct. 1376 (2012), and Missouri v. Frye, 132 S. Ct. 1399 (2012), is inapposite.  Although both decisions discuss the duty of counsel during the plea bargaining process, neither supports a finding of deficient performance here.  In Frye, the Supreme Court found that counsel performed deficiently by altogether failing to communicate a plea offer to his client, thus undoubtedly depriving his client of the ability to choose between a plea offer or proceeding to trial.  Frye, 132 S. Ct. at 1408.  In Cooper, the government conceded that counsel performed deficiently where he advised his client to reject a plea offer based on patently incorrect legal advice.  Cooper, 132 S. Ct. at 1383 (counsel told defendant that because he shot victim below the waist, prosecution would not be able to prove he committed assault with intent to murder).  However, no such objective error exists here, where counsel advised Gordon to plead guilty in the hope of obtaining lenience, but where counsel could not anticipate what sentence the Court would ultimately impose.

sentence.  That assumption is in error, and a classic example of second-guessing counsel with the benefit of hindsight, which <u>Strickland</u> forbids.  466 U.S. at 689.

Defense attorneys have no constitutional duty to forecast their client's sentence. <u>See</u> <u>Cooks v. United States</u>, 461 F.2d 530, 532 (5th Cir. 1972) ("[C]ounsel's inability to foresee future pronouncements [by the courts]… does not render counsel's representation ineffective… Clairvoyance is not a required attribute of effective representation.").  At the time counsel advised Gordon to enter into the Plea Agreement, he could not have predicted that the Court would sentence him to life in prison.  The truth is that nobody – neither the United States, nor Gordon or his attorney, nor even the Court itself – knew what Gordon's sentence would be until after the presentence report (PSR) was prepared and the parties had been given the opportunity to present arguments and evidence at the sentencing hearing.   Gordon's potential sentence ranged from the mandatory minimum of 15 years in prison up to the maximum sentence of life.   Any sentence in between (and inclusive of) those boundaries was possible. It was not unreasonable for counsel to hope that in light of his guilty plea the Court would show Gordon lenience for accepting responsibility.   Indeed, it is a strategy that the Eleventh Circuit has recognized as reasonable where the evidence against the defendant is overwhelming – and to be sure, the evidence against Gordon was overwhelming.[8]  <u>See</u> <u>Quince v. Crosby</u>, 360 F.3d 1259, 1265 (11th Cir. 2004) ("However, we agree with the

---

[8]     The government was prepared to prove that Gordon, through the use of force and threats of force, had caused a minor to perform commercial sex acts in interstate commerce.  First, the government had A.B.'s own testimony as to what Gordon forced her to do, and how he used violence and threats of violence to force her to do it.  The government was able to connect Gordon's conduct to interstate commerce through the cell phone he used to solicit customers for A.B. and the hotels Gordon utilized, which catered to interstate travelers.  The government also had physical evidence, including a replica gun with which A.B. said Gordon threatened her, as well as pants stained with A.B.'s blood that were found in Gordon's vehicle.

district court that [counsel]'s explanation-that he felt the evidence was overwhelming against appellant and that by avoiding a jury trial, the trial judge might have shown mercy and granted appellant a life sentence-was a reasonable one.").

Moreover, under the Plea Agreement, Gordon (whose Guidelines criminal history category was V) received a three offense level reduction for acceptance of responsibility, which reduced his final offense level from 44 to 41, see Sentencing Tr. at 24-25.   That three-level reduction improved Gordon's prospects under the Guidelines by reducing his advisory sentencing range from simply life in prison to a range of 360 months and up to life in prison.   See U.S.S.G. Sentencing Table (2010).   Thus, counsel advised Gordon to accept a plea offer that had the effect of materially lowering his advisory Guidelines range. However, counsel could not have known at the time he advised Gordon to accept the Plea Agreement that the Court would sentence Gordon to the high end of his eventual Guidelines range.

Thus, Gordon's choices were (a) going to trial, almost certainly being convicted, and receiving no credit for accepting responsibility, (b) entering an open plea with no guaranteed benefits, but retaining appellate rights and hoping to receive mercy for acknowledging his guilt, or (c) pleading guilty pursuant to a written plea agreement with some known benefits, including an agreement by the government to recommend a reduction of his offense level for accepting responsibility, hoping for lenience, and waiving the right to directly or collaterally attack his sentence.   As between going to trial and entering some form of guilty plea, it was not unreasonable for counsel to advise Gordon to plead guilty with the hope of receiving a lighter sentence, especially in light of the wealth of evidence that made a conviction nearly certain.   As between entering an open plea and

18

a negotiated plea, the Court cannot say, based on counsel's perspective at the time, that the trade-off between the sentence-appeal waiver and the benefits promised under the Plea Agreement was unreasonable.  Counsel could not have known what sentence the Court would ultimately impose when he advised Gordon to accept the Plea Agreement. What counsel did know was that in addition to recognizing his acceptance of responsibility, in the Plea Agreement, the government agreed to spare Gordon from further charges, and also agreed to consider a reduction of Gordon's ultimate sentence or offense level under U.S.S.G. §§ 3E1.1(b) and 5K1.1, or under 18 U.S.C. § 3553(e). Counsel reasonably could have concluded that reducing Gordon's Guidelines offense level, and obtaining the government's agreement to consider substantial assistance and not bring further charges, would sufficiently reduce Gordon's final sentence to make the trade-off worthwhile.

On this record, the Court cannot find this exchange of benefits unreasonable or insufficient.  Just as the Court will not second-guess the sufficiency of consideration, the Court will not second-guess counsel's advice that Gordon accept the instant Plea Agreement rather than go to trial.  Based on the limited information available to counsel at the time he advised his client, most notably the fact that counsel could not predict the final sentence, the Court declines to find that he performed in a professionally unreasonable manner.

Even if the Court found that trial counsel's failure to forecast the final sentence was deficient, Gordon has not shown prejudice because he pled guilty knowing that he could still receive a life sentence.  The record shows that Gordon knowingly and voluntarily pled guilty with the benefit of a thorough Rule 11 plea colloquy, see Fed. R. Crim. P. 11, at

which the Court warned Gordon that his sentence was unpredictable, and that he could be sentenced to a maximum term of life in prison.   Plea Tr. at 9-10; <u>see also</u> Plea Agreement at 1-2.   Gordon specifically told the Court that he did not plead guilty on the assumption that he would receive a light sentence.   Plea Tr. at 29-30.   He also confirmed his understanding and voluntary acceptance of the sentence-appeal waiver.   <u>Id.</u> at 16-18. Therefore, even if counsel could be considered deficient for not predicting Gordon's sentence, the Court's complete Rule 11 colloquy corrected or filled in any gaps in Gordon's knowledge about sentencing risks, thereby neutralizing any prejudice resulting from inadequate or contrary advice from counsel.   <u>See e.g.</u>, <u>United States v. Wilson</u>, 245 F. App'x 10, 12 (11th Cir. 2007) ("During the plea colloquy, the district court itself explained to Wilson – in detail – the consequences of the plea agreement, range of punishment, and sentencing contingencies before accepting Wilson's guilty plea.   Thus, any failure on the part of Wilson's counsel to clearly explain the possible punishment was cured by the district court."); <u>Gambrel v. United States</u>, 2013 WL 3934205 at *11 (S.D. Ga. July 30, 2013) ("So long as the Rule 11 court correctly advises a defendant of the minimum and maximum penalties he faces as a result of pleading guilty, a petitioner fails to establish prejudice by alleging that counsel gave erroneous advice about the sentence he might receive or the possibility for enhancements under the Sentencing Guidelines."); <u>United States v. Shedrick</u>, 493 F.3d 292, 299 (3d Cir. 2007) (affirming denial of § 2255 claim that counsel was ineffective for failing to advise petitioner of "the potential for enhancement or upward departure" where such failure was "corrected by the written plea agreement and the detailed in-court plea colloquy, both of which accurately stated [petitioner's] potential sentence.").   Because Gordon pled guilty and confirmed his

sentence-appeal waiver even after the Court warned him he could be sentenced to life in prison, he has failed to show how counsel's failure to predict the same sentence prejudiced him.

### C. Gordon has not established a fair probability that he would have rejected the plea offer in favor of an open plea or going to trial

Gordon alleges that counsel failed to advise him of the option of entering an open plea. See Motion to Vacate at 4. First, Gordon claims that

> [t]he movant was prejudiced by counsel's [ ] advice. For example, the movant could have entered into an "open plea" without the "benefit" of a plea agreement. In this manner, the movant would have retained his right to direct appeal and collateral motions. There were crebible [sic] issues that could have been raised on direct appeal and in collateral attack motions.

Id. This statement does not actually assert that counsel did not advise Gordon at all of the option to enter an open plea, only that counsel's advice to choose a negotiated guilty plea over an open plea was unreasonable. But in his next statement, Gordon alleges that "[b]y counsel failing to advise the movant of the ability to enter an 'open plea,' so as to retain and not waive substantial rights in exchange for nothing, counsel provided ineffective assistance that prejudiced the movant." Id. So the latter statement arguably, albeit in fifteen words, suggests that counsel did not inform Gordon of the option of entering an open plea. Because nothing in the record affirmatively contradicts the allegation that counsel did not advise Gordon of the option to enter an open plea, the Court will assume the truth of such assertion for present purposes. See Aron, 291 F.3d at 714-15. Nevertheless, the Court finds that the record prevents a showing of prejudice on this or the other two allegations of ineffective assistance.

First, Gordon has not shown prejudice from counsel not informing him of the open plea option because he does not allege that he actually would have entered an open plea. In order for a petitioner to establish prejudice from an attorney's failure to communicate an expired plea offer, he must show a reasonable probability that he would have actually accepted the offer.  Missouri v. Frye, 132 S. Ct. 1399, 1409 (2012).  Where, as here, a petitioner alleges that counsel performed deficiently by not advising him of the option to enter into an open plea, the petitioner must show a reasonable probability that he would have actually taken advantage of that option.  If a petitioner would not have entered an open plea anyway, however, he cannot show that he suffered prejudice from not being informed of the choice.  Here, Gordon has not demonstrated the necessary prejudice. Gordon merely states that he "could have entered into an 'open plea' without the 'benefit' of a plea agreement."  Motion to Vacate at 4.  Gordon does not specifically allege that he would have entered an open plea.  Instead, he alternates between suggesting that he might have entered into an open plea, id., and that he might have gone to trial.  See Reply at 8.[9]  Therefore, Gordon has not shown that he suffered prejudice from counsel not informing him of the open plea option because he has not shown a fair probability – or even alleged – that he would have actually entered an open plea.

Second, as Gordon now alleges that an open plea would have been preferable to the Plea Agreement because an open plea would have preserved his right to appeal, Gordon has further failed to show prejudice because he has not identified any arguably meritorious appellate issues.  Thus, Gordon has failed to articulate how the Plea

---

[9]     Notably, Gordon is represented by counsel, so he is not entitled to a liberal construction of his pleadings to cure the deficient allegation.  See Aron, 291 F.3d at 715 ("Moreover, the court should construe a habeas petition filed by a pro se litigant more liberally than one filed by an attorney.").

Agreement's sentence-appeal waiver has burdened him, or how an open plea (with the preservation of the right to appeal but no other known benefits) would have placed him in a better position.

More importantly, even if the Court found that counsel performed deficiently in the plea bargaining process, whether by (1) not obtaining "enough" for his client in negotiations, (2) not advising Gordon to go to trial (because counsel failed to predict that a guilty plea would lead to a life sentence anyway), or (3) not advising Gordon about entering an open plea in order to preserve his sentence-appeal rights, the Court would find as to all three that Gordon did not suffer prejudice because he made an informed choice to accept the costs and benefits of his current Plea Agreement.  The record establishes that Gordon intelligently accepted the benefits as well as the risks – including the sentence-appeal waiver and the risk of a life sentence – and Gordon has not shown a reasonable probability that he would have rejected a Plea Agreement in favor of an open plea (with no guaranteed benefits) or going to trial given his perspective at the time.

Gordon stated, under oath, that he had read every page and every word of the entire agreement, reviewed it with his attorney, and that he fully understood its terms.  Id. at 13.  The Court reviewed with Gordon each of the United States' concessions under the Plea Agreement.  Gordon obtained concrete benefits, such as the government's promise not to bring further criminal charges if the Court accepted the Plea Agreement, as well as the government's promise to recommend reductions for acceptance of responsibility under U.S.S.G. § 3E1.1.  Id. at 14; see also Plea Agreement at 2-3.   The Court explained along the way that other items, such as whether the government would move for a reduced sentence based on any cooperation Gordon provided, were solely in the

discretion of the United States Attorney's Office.  Id. at 14-15.  Gordon stated that he understood.  Id. at 15.  The Court then explained to Gordon that the sentencing judge alone would ultimately determine whether to accept any sentencing recommendations, and that Gordon would not be allowed to withdraw his guilty plea if he was disappointed with the result.  Plea Tr. at 14-15.  Gordon stated that he understood that as well.  Id. at 14, 15.  The Court further notified Gordon that he waived the right to directly appeal or collaterally attack his sentence.  Id. at 16-18.  The Court explained the meaning of direct appeal and collateral attack, and explained that Gordon waived the right to use either to attack his sentence.  Id. at 16-17.  Gordon said he understood what the Court meant by direct appeal and collateral attack, and further stated that he knowingly and voluntarily waived those rights.  Id.  In the end, Gordon affirmed that it was his free and independent decision to plead guilty, and that he did so without reliance on any promises outside of the Plea Agreement.  Id. at 29-31.

Notably, the first page of Gordon's Plea Agreement informed him that his charge was punishable by up to a lifetime term of imprisonment.  Plea Agreement at 1.  The Court similarly informed Gordon during the plea colloquy that the maximum potential sentence was life in prison.  Plea Tr. at 10.  The Court directly warned Gordon that his Guidelines sentencing range would remain unknown until the PSR was prepared, that his sentence could be different from any estimate his attorney had given him, and that if his sentence was more severe than he expected, the Plea Agreement would still bind him.  Id. at 8-9. Gordon confirmed that he understood the uncertainty of his sentence and the maximum potential punishment.  Id. at 9, 10.  Specifically, Gordon assured the Court that nobody had advised him that he would receive a light sentence, or any specific sentence at all, in

exchange for pleading guilty.  Id. at 29-30.  Counsel for both the United States and Gordon made the same assurances to the Court.  Id. at 30.

Thus, the record reflects Gordon's willingness to accept the costs of pleading guilty (both immediate and potential) in exchange for the Plea Agreement's benefits, such as the government's promise to bring no further charges, to support a three offense level reduction for acceptance of responsibility, and to consider any substantial assistance Gordon provided before sentencing.  Gordon chose to plead guilty aware that he was not guaranteed lenience or any benefits other than those stated in the Plea Agreement. Gordon was further aware of the uncertainty of sentencing, and he accepted that reality. There is no indication from the record that Gordon misunderstood any of the terms of his Plea Agreement, that he objected to the sentence-appeal waiver, or that he was unaware that the Court could still impose the maximum sentence even after admitting guilt. Accordingly, given Gordon's willingness to accept the benefits of the Plea Agreement as they were, Gordon has not demonstrated a reasonable probability that he would have preferred to enter an open plea or go to trial instead of accept the plea offer.

Because the record of the plea colloquy demonstrates that Gordon pled guilty with full knowledge of the benefits and potential consequences of his Plea Agreement, including the possibility of a life sentence, he has not shown a reasonable probability that he would not have accepted the Plea Agreement and would have insisted on going to trial or entering an open plea but for one of the alleged errors of trial counsel.  See Hill, 474 U.S. at 59.  For the foregoing reasons, Gordon's Motion to Vacate is due to be denied.

### IV.     Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)

If Gordon seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). To make this substantial showing, Gordon "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.  Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

As such, and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, it is hereby

**ORDERED**:

1.  Petitioner Ian Sean Gordon's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody under 28 U.S.C. § 2255 (Doc. 1, Motion to Vacate) is **DENIED**.

2.  The Clerk shall enter judgment in favor of the United States and against Ian Sean Gordon, terminate all pending motions, and close the file.

3.  If Gordon appeals the denial of the petition, the Court denies a certificate of appealability.  Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 30th day of January, 2015.


MARCIA MORALES HOWARD
United States District Judge


Lc19

Copies:
Counsel of Record
Pro se party

27